**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRELL ROBERTS, et al.,<br><br>                              Plaintiffs,<br>v.<br>CITY OF CHULA VISTA,<br><br>                              Defendant. | Case No.:  16cv1955-MMA (DHB)<br><br>**ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSING ACTION WITH PREJUDICE**<br><br>[Doc. No. 44] |

Plaintiffs Darrell Roberts, et al. ("Plaintiffs"), bring this action against Defendant City of Chula Vista (the "City") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. *See* Doc. No. 1 (hereinafter "Comp."). On November 2, 2017, the parties filed a joint stipulation and request for approval of the parties' settlement agreement and dismissal of this action with prejudice. *See* Doc. No. 39. On November 29, 2017, the Court issued an order requesting the parties supplement their stipulation for approval and dismissal by way of declaration(s), briefing, or both. *See* Doc. No. 43. On December 15, 2017, the parties filed a revised joint motion for approval of the FLSA settlement and dismissal of the action with prejudice. *See* Doc. No. 44. Having considered the parties' supplemental briefing, declarations, and relevant law, the Court **GRANTS** the joint motion and **APPROVES** the settlement agreement.

/ / /

**BACKGROUND**

Plaintiffs are or were employed by the City of Chula Vista as firefighters. *See* Doc. No. 44 at 6. Plaintiffs are non-exempt employees; thus, Plaintiffs are entitled to overtime compensation under the FLSA. *See* Comp. ¶ 5. Plaintiffs' exclusive bargaining representative is International Association of Fire Fighters AFL-CIO, Local 2181 ("IAFF"), which negotiates the collective bargaining agreement applicable to Plaintiffs (also known as the Memorandum of Understanding ("MOU")). Doc. No. 44 at 6.

During the relevant time period, Plaintiffs allege that they worked overtime as the term is defined under section 207(k) of the FLSA, and as the term is defined in the MOU. *See id.* Plaintiffs commenced this action on August 2, 2016, alleging that the City failed to correctly pay overtime compensation in violation of the FLSA. *See* Comp. ¶¶ 5-6. Moreover, Plaintiffs claim that the City did not include all forms of remuneration in its calculation of Plaintiffs' regular rate of pay. Comp. ¶ 6. As a result, Plaintiffs seek actual, consequential, liquidated and incidental damages, and any such other damages as may be allowed. Further, Plaintiffs seek attorney's fees and costs. *See id.* On February 3, 2017, the City filed an answer to Plaintiffs' Complaint, denying the material allegations and asserting affirmative defenses. *See* Doc. No. 17.

In July 2017, the parties represented to the Court that they had reached a settlement in principle. *See* Doc. No. 30 at 1. In the parties' renewed stipulation and request for dismissal of the action with prejudice, the parties attach the relevant settlement agreement as Exhibit A. *See* Doc. No. 44-1.

The settlement agreement provides that the City will pay a total of $1,039.616.81 to settle the claims of the one hundred and twenty-four plaintiffs. *See* Doc. No. 44-1 at 13.[1] Specifically, the City will pay three years of back overtime pay in the amount of $538,890.79. *Id.* at 13. The City will also pay liquidated damages in the amount of $470,426.02. *Id.* Lastly, the City will pay the law firm of Adams, Ferrone & Ferrone

---

[1] Citations to this document refer to the pagination assigned by CM/ECF.

1  $29,700 in attorney's fees and $600 in costs. *Id.* at 14.

2  The settlement agreement further provides that Plaintiffs agree to dismiss with prejudice their claims against the City arising prior to the effective date of the settlement agreement, with the exception of any claims Plaintiffs may have a result of the holding in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016). *Id.* The release of claims is to become effective upon the Court's approval of the settlement agreement and dismissal of the action. *See id.* at 17.

## LEGAL STANDARD

"The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1171 (S.D. Cal. 2016). Specifically, "[t]he FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court." *Selk*, 159 F. Supp. 3d at 1172; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved." *Beidleman v. City of Modesto*, 2017 WL 5257087, at *1 (E.D. Cal. Oct. 26, 2017). However, district courts in the Ninth Circuit generally apply the standard adopted by the Eleventh Circuit in *Lynne's Food Stores*. *Id.*; *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, at *1-2 (N.D. Cal. June 22, 2017); *Selk*, 159 F. Supp. 3d at 1172; *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014). Thus, in reviewing a FLSA settlement, courts must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Selk*, 159 F. Supp. 3d at 1172 (citing *Ambrosino*,

2014 WL 1671489, at *1). A court will not approve a settlement of an action where there is no question that the FLSA entitles the plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *See id.*

Once a court determines that a bona fide dispute exists, "it must then determine whether the settlement is fair and reasonable." *Id.* Courts should consider the following factors in evaluating whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and the amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel; and (6) the possibility of fraud or collusion. *Id.* at 1173. A "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

Finally, the Court must evaluate whether the award of attorney's fees and costs is reasonable. *See Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (noting that in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

"If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Ambrosino*, 2014 WL 1671489, at *1 (citing *Lynn's Food Stores*, 679 F.2d at 1354).

## DISCUSSION

### A. A Bona Fide Dispute Exists

As an initial matter, the Court finds that a bona fide dispute exists between the parties over potential liability under the FLSA. In their joint motion, the parties expressly state that they dispute whether the City's practice of not including all forms of remuneration in its calculation of Plaintiffs' regular rate of pay, actually undercompensates employees in violation of the FLSA. Doc. No. 44 at 11. The City

counts paid time off (e.g., vacation, compensatory time, and sick leave) as hours worked. Doc. No. 44-1 at 1 (hereinafter "Arce Decl.") ¶ 17.  The City is not required to count paid time off towards the FLSA overtime hours threshold, even though the MOU counts paid time off as time worked for purposes of contractual overtime.  *See id.* ¶¶ 17-18.  Yet, Plaintiffs assert that paid time off should be counted towards the FLSA overtime threshold because the parties contractually agreed to it.  Doc. No. 44 at 12.  Thus, in light of the competing views on issues central to the case, the Court finds that there is a bona fide dispute as to whether "the collective bargaining agreement allows the City to offset its FLSA liability with overtime payments made under the [MOU] contract."  Doc. No. 44-2 (hereinafter "McGill Decl.") ¶ 14.

**B. The Settlement Agreement is Fair and Reasonable**

Satisfied that a bona fide dispute exists between the parties, the Court next considers the relevant factors in determining whether the settlement agreement is fair and reasonable under the FLSA.

*1. Plaintiffs' Range of Possible Recovery*

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims."  *Selk*, 159 F. Supp. 3d at 1174.  However, the settlement amount agreed to need not represent a certain percentage of the maximum possible recovery.  *See id.*; *see also Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").  Ultimately, the Court must be satisfied that the amount agreed to is fair and reasonable under the circumstances presented.  *See Selk*, 159 F. Supp. 3d at 1174.

Here, Plaintiffs seek three years of back pay and liquidated damages, treatment of all hours in paid status as hours worked, and a calculation of overtime worked based on the parties' negotiated labor agreement.  Doc. No. 44 at 12.  As noted above, the total

settlement amount represents three years of back overtime pay in the amount of $538,890.79, $470,426.02 in liquidated damages, $29,700 in attorney's fees, and $600 in litigation costs. *See* Doc. No. 44 at 9. The City calculated back pay owed to each individual plaintiff by exporting the payroll and timekeeping data for each firefighter onto Excel spreadsheets. Arce Decl. ¶13. "With this information, the City was able to determine how many actual hours each individual worked, the number of paid leave hours, the amount of special or additional payments received to be included in the overtime calculation, the individuals' FLSA work period (24-days)," the number of FLSA and MOU overtime hours worked per work period, and "the amount actually paid to each Plaintiff." *Id.*

To compute the settlement amount for each individual, "the City calculated the overtime owed for unscheduled overtime by determining the total remuneration in a 24-day work period by adding the base salary, plus regular/ongoing differentials and incorporated all special pays." *Id.* at ¶ 15. Next, the City determined the "estimated 'calculated addition' owed between the overtime rate the employee received and the overtime rate the employee *should have received*." *Id.* (emphasis in original). The City multiplied the "calculated addition" by overtime hours in the 24-day work period to generate the additional amount owed to every employee in each 24-day work period. *Id.* The settlement amount also includes the unpaid premium on scheduled overtime. *Id.* at ¶ 16. The amount of liquidated damages the City has agreed to pay ($470,426.02) represents approximately 85% of the back pay. *Id.* at ¶¶ 12, 18.

Further, during settlement negotiations, the City provided Plaintiffs with the relevant payroll and timekeeping data and spreadsheets showing the methodology for the back pay calculations. *Id.* at ¶ 11. Plaintiffs and their attorney were afforded an opportunity to review this information. The parties, and their respective attorneys, met in person on September 7, 2017, so that Plaintiffs, represented by Darrell Roberts and Mark McDonald, could ask questions about the City's calculations. *Id.*

In light of the foregoing, the Court finds that the total settlement amount is

relatively close to Plaintiffs' maximum recovery. Though the parties do not identify a certain percentage that the settlement amount roughly equates to, aside from the liquidated damages amount (85% of the back pay), the parties represent that each individual eligible to recover under the settlement agreement will receive "close to their maximum recovery" if the case went to trial. *Id.* at ¶ 18. Having considered the City's procedures for calculating the settlement amount, the Court finds the settlement to be in the range of reasonableness of wage and hour actions. *See Selk*, 159 F. Supp. 3d at 1175 (concluding that a settlement was fair and reasonable where the settlement fund represented between 26% and 50% of the best possible recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery). As such, this factor favors approval of the settlement agreement.

### 2. Stage of Proceedings

"The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177. As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties did not engage in formal discovery. However, the parties exchanged information, analyzed the City's time records, and engaged in informal settlement discussions prior to reaching the settlement agreement. Arce Decl. ¶ 11; McGill Decl. ¶15. Counsel also discussed how damages should be calculated in this case. Arce Decl. ¶ 7; McGill Decl. ¶15. Additionally, two of the plaintiffs and their respective attorneys met on September 7, 2017, in order to give the plaintiffs an opportunity to review the City's calculations and ask any questions that they may have. Arce Decl. ¶11. Given the information exchanged between the parties, and the attorneys' research on Plaintiffs' claims, the Court finds that the parties have "sufficient

information" to reach an informed decision. *Linney*, 151 F.3d at 1239. Accordingly, this factor favors approval of the settlement agreement.

### 3. Litigation Risks

The Court also considers the seriousness of the litigation risks in determining whether the settlement agreement is fair and reasonable. *See Selk*, 159 F. Supp. 3d at 1175-76. Here, the parties agree that they face "substantial uncertainty in the outcome of the case should the litigation proceed to trial." Doc. No. 44 at 14. Specifically, the parties dispute the amount of Plaintiffs' potential recovery, in addition to the City's potential liability. Plaintiffs allege that the City miscalculated the regular rate of pay, but the City contends that even if Plaintiffs' allegations are true, such a violation does not automatically trigger liability for each plaintiff in the amounts originally claimed. *See id.* at 15. The City is only liable if it paid the firefighters less than what they are owed under the FLSA. *Id.* Moreover, Plaintiffs claim that their recovery should be based on overtime as defined by their labor agreement, yet there is a competing argument that contractual overtime is distinguishable from FLSA overtime and should not be used to determine FLSA compensation owed. McGill Decl. ¶ 14. Finally, even if Plaintiffs were ultimately successful at trial, "recovery may be delayed for years pending litigation and possible appeals of any adverse decision." *Id.* at ¶ 16. Thus, in light of the litigation risks posed in this case, the Court finds that "there is a significant risk that litigation might result in a lesser recover[y]" or "no recovery at all." *Bellinghausen*, 306 F.R.D. at 255. Accordingly, this factor weighs in favor of approval of the settlement agreement.

### 4. Scope of Release

"Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Generally, a release provision that tracks a plaintiff's wage and hour claims without requiring the plaintiff to waive unrelated claims tips in favor of approval. *See id.* Here, the release provision contained in the settlement agreement tracks Plaintiffs' wage and hour claims. *See* Doc. No. 44-1 at 14. The

Plaintiffs agree to resolve, release, waive and discharge any claims that they may have under the FLSA arising *prior* to the effective date of the agreement, except for claims Plaintiffs may have as a result of the holding in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016). *See id.* In reviewing the scope of the release provision contained in the parties' settlement agreement, the Court "is satisfied" that the release provision is limited in scope and "does not force class members to forfeit unrelated claims[.]" *Selk*, 159 F. Supp. 3d at 1179. Accordingly, this factor weighs in favor of approval of the settlement agreement.

### 5. *Experience of Counsel*

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, Plaintiffs' counsel has thirteen years of experience in the field of labor and employment law. McGill Decl. ¶¶ 3-4. Mr. McGill has "handled matters before nearly every judicial and quasi-judicial tribunal . . . including the Public Employment Relations Board, the State Personnel Board, most Superior & District courts, most State Appellate courts, the Ninth Circuit, and the United States Supreme Court." *Id.* at ¶ 4. Counsel for the City has nearly two decades of experience practicing law, with nearly half of that time devoted to representing public entities. Arce Decl. ¶ 2. Both attorneys opine that the settlement agreement is fair and reasonable. McGill Decl. ¶ 16; Arce Decl. ¶ 18. Finally, "there is nothing in the record that calls into question the experience of counsel or raises doubt about counsel's judgment." *Selk*, 159 F. Supp. 3d at 1176. Thus, the Court finds that this factor weighs in favor of approval of the settlement agreement.

/ / /

    6. *Possibility of Fraud or Collusion*

Lastly, courts consider the possibility of fraud or collusion in evaluating whether the proposed settlement agreement is fair and reasonable. Here, the Court finds no evidence that the parties, or their counsel, colluded or pursed their own self-interests in reaching the settlement agreement. The settlement agreement reflects a "reasonable compromise" of the disputed issues, damages, and expense of further litigation. McGill Decl. ¶ 16. Additionally, the individual settlement amounts were calculated based on objective data, including the City's time records and wage statements. Arce Decl. ¶ 13; McGill Decl. ¶15. Moreover, the Court finds no evidence of "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (hereinafter "*In re Bluetooth*"). Accordingly, this factor favors approval of the settlement agreement.

    7. *Conclusion*

In sum, having considered the relevant factors and the representations of the parties, the Court concludes that the parties' settlement agreement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage. *See Lynn's Food Stores*, 679 F.2d at 1355.

**C. Attorney's Fees and Costs**

Plaintiffs' counsel seeks $29,700 in attorney's fees and $600 in litigation costs. McGill Decl. ¶ 18. "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)). Where a settlement produces a common fund for the benefit of the plaintiffs, courts may employ the lodestar or percentage-of-recovery method to determine the reasonableness of the requested fee award. *See In re Bluetooth*, 654 F.3d at 942. However, where the recovery is separate from a common fund, courts typically employ the lodestar method. *See id.* Here, Plaintiffs' counsel notes that his fees are "separate

from the amounts being provided to the Plaintiffs" and that his "fees and costs are not coming out of the Plaintiffs' recovery." McGill Decl. ¶ 18. As such, the Court utilizes the lodestar method in determining whether Mr. McGill's requested fees and costs are reasonable.

Under the lodestar method, courts multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgepoint Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

      *1. Reasonable Hourly Rate*

First, the court must determine whether the hourly rate requested is reasonable. "Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) (internal citations and quotations omitted). To determine the prevailing market rates, courts should consider "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). The relevant legal community is "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). "Evidence the Court should consider includes '[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney.'" *Ravet v. Stern*, 2010 WL 3076290, at *2 (S.D. Cal. 2010) (citing *United Steelworkers of Am. v. Phelps Dodge*

*Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

Here, Mr. McGill declares that the current market rate for work performed by an attorney with his same level of experience and accomplishments is $500 per hour. McGill Decl. ¶ 17. Mr. McGill has been practicing law for more than 13 years, and since his graduation from law school, he has focused his practice almost exclusively on public safety employees—namely police officers and firefighters. *Id.* at ¶¶ 2-3. Moreover, Mr. McGill has negotiated more than 75 collective bargaining agreements, and his law firm serves as general counsel to more than 100 public safety unions. *Id.* at ¶ 5. Notably, Mr. McGill has worked on two cases before the United States Supreme Court, including preparing the written brief in both cases and presenting oral argument in one of the cases. *Id.* at ¶¶ 7-8. Lastly, a district court from the Central District of California approved an hourly rate of $450 in a similar FLSA case in July 2013. *Id.* at ¶ 17. Thus, in considering Mr. McGill's background, relevant experience in this area of law, and the Court's knowledge and experience of customary rates concerning reasonable and proper fees (*Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)), the Court finds that Mr. McGill's requested hourly rate of $500 is reasonable.

### 2. Reasonable Hours Expended

Next, the Court must determine whether the number of hours expended by counsel on this litigation was reasonable. "A reasonable number of hours is equal to the number of hours that the attorney could reasonably bill to a private client." *Slezak*, 2017 WL 2688224, at *7 (citing *Gonzalez*, 729 F.3d at 1202). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Here, Mr. McGill avers that he spent "well over 60 hours prosecuting this case." McGill Decl. ¶ 18. Moreover, Mr. McGill asserts that "my actual fees exceed the agreed upon amount of fees paid in this case, and represent a concession in order to bring this

matter to a speedy resolution." *Id.* The Court finds Mr. McGill's hours to be reasonably expended, given that the parties engaged in informal settlement discussions for several months, were required to review complex payroll and timekeeping data and spreadsheets, and "presented each other with relevant legal authority in support of their respective positions, and conducted extensive arms-length negotiations before finally compromising on their respective positions. Arce Decl. ¶ 11.

### 3. *Lodestar Figure*

In light of the parties' submissions, the Court concludes that the requested amount of fees ($29,700) is reasonable given the circumstances of this case. The reasonableness of the fee award is primarily reinforced by the fact that in multiplying Mr. McGill's hourly rate ($500) by the hours expended (60 hours), the lodestar figure totals $30,000—three hundred dollars more than the amount requested. Moreover, each plaintiff approved this amount when they signed the settlement agreement. *See* Doc. No. 44-1 at 17-52. Accordingly, because Mr. McGill requests *less* than the presumptively reasonable lodestar figure, and considering the diligent efforts of the parties in this case, the Court finds that the requested amount of fees totaling $29,700 to be reasonable, and awards the amount requested.

### 4. *Costs*

Finally, Mr. McGill requests recovery of $600 in litigation costs, which includes the filing fee to commence this action ($400), copying fees, and postage. McGill Decl. ¶ 18. The Court finds that the amount requested in costs is reasonable under the circumstances, and awards such costs as requested.

## CONCLUSION

Based on the foregoing, the Court finds the settlement agreement is a fair and reasonable resolution of a bona fide dispute. As such, the Court **GRANTS** the parties' joint motion for approval of settlement. The Court further **APPROVES** the payment of $29,700 in attorney's fees and $600 in costs to the law firm of Adams, Ferrone & Ferrone, and **DISMISSES** this action in its entirety **with prejudice**. The Court declines

to retain jurisdiction over this matter for the purpose of enforcing the settlement agreement. The Clerk of Court is instructed to close the case.

**IT IS SO ORDERED.**

Dated: December 21, 2017

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge